EXHIBIT A

**ALAN I. SCHIMMEL, ESQ., CSB #101328**
**MICHAEL W. PARKS, ESQ., CSB #154531**
**ARYA RHODES, ESQ., CSB #299390**
**SCHIMMEL & PARKS, APLC**
15303 Ventura Boulevard, Suite 650
Sherman Oaks, California 91403
(818) 464-5061
(818) 464-5091/FAX

**SHAWNA S. NAZARI, ESQ., CSB #214939**
**NAZARI LAW**
2625 Townsgate Rd., Suite 330
Westlake Village, California 91361
(818) 380-3015
(818) 380-3016/FAX

Attorneys for Plaintiffs

Electronically FILED by
Superior Court of California,
County of Los Angeles
7/16/2024 12:48 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By J. Nunez, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

SCOTT BENJAMIN SIEGAL, an individual;
THOMAS LEE TATE, an individual;
ISABELL DOLORES PALOMINO, an
individual; RUFINO JUAREZ, an individual;
BRAD KENNETH BECKER, an individual,
et al.

(See additional Plaintiffs listed in "Appendix 1")

v.

CHIQUITA CANYON, LLC, a Delaware
Limited Liability Company; CHIQUITA
CANYON, INC., a Delaware Corporation;
WASTE CONNECTIONS US, INC., a
Delaware Corporation; AMERESCO
CHIQUITA CANYON ENERGY LLC, a
Delaware Limited Liability Company;
STEARNS, CONRAD AND SCHMIDT
CONSULTING ENGINEERS, INC. (dba
SCS ENGINEERS), a Virginia Corporation;
ULTRASYSTEMS ENVIRONMENTAL,
INC., a California Corporation; and DOES 1
through 150, inclusive.

Case No.  24STCV17748

**COMPLAINT FOR DAMAGES**

1. NEGLIGENCE
2. NEGLIGENCE PER SE
3. STRICT LIABILITY FOR ULTRAHAZARDOUS ACTIVITIES
4. CONTINUING PRIVATE NUISANCE
5. PERMANENT PRIVATE NUISANCE
6. CONTINUING PUBLIC NUISANCE
7. PERMANENT PUBLIC NUISANCE
8. TRESPASS

**JURY TRIAL DEMANDED**

1

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

## __Appendix 1__

ZACHARY AUSTIN ADLESH, an individual;

JOSE MOISES ALVAREZ, an individual;

TARA MARIE AMARO, an individual;

YURIDIA HIGUERA ARELLANES, an individual;

RAMON MORENO ARIAS, an individual;

ANGELA BAILEY, an individual;

SANDRA BARLAN, an individual;

LAURO BARLAN, an individual;

ARIANA BARRAGAN, an individual;

STEPHANIE BARRAGAN, an individual;

JAVIER VAZQUEZ BAUTISTA, an individual;

JULIE BEIJER, an individual;

DENISE BERKOWITZ, an individual;

PAIGE BERKOWITZ, an individual;

MELISSA BERKOWITZ, an individual;

CAMERON BESWICK, an individual;

LILY BOBLOYAN, an individual;

LORI BOBRICK, an individual;

GAREN BOSHYAN, an individual;

JAMIE BRIANO, an individual;

TIMOTHY BUSSIO, an individual;

JORGE ERNESTO CALVILLO, an individual;

JUAN CARLOS CASTANEDA, an individual;

SOLEDAD CASTANEDA, an individual;

JUAN CASTANEDA, an individual;

OSCAR CASTANEDA, an individual;

ANTONIO CIRINO SILVA CASTELLANOS, an individual;

SAMUEL CHAVEZ, an individual;

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

JAE HYUN CHO, an individual;

GOON JA CHO, an individual;

JI WOONG CHOI, an individual;

SUMIN CHOI, an individual;

JAEWON CHOI, an individual;

WOOSIK CHOI, an individual;

MARQUINTA BRYANT-COBLE, an individual;

PAUL COBLE, an individual;

TIFFANY COBLE, an individual;

RICHARD A. CONTRERAS, an individual;

ANA MARIA CUELLAR, an individual;

BRYAN CUNNINGHAM, an individual;

ELLEN CUNNINGHAM, an individual;

TARYN CUNNINGHAM, an individual;

COLIN CUNNINGHAM, an individual;

CAROL DOBRATZ, an individual;

RONNIE DERRICK DOUGHTY, an individual;

ENRIQUE FLORES JR, an individual;

AARON FORNELLI, an individual;

MEGHAN BLAIR FRANK, an individual;

JESUS SAUL GALVAN, an individual;

ROGELIO GARCIA, an individual;

LEON JOSEPH GRANT, an individual;

ARIANA GRIFSHA, an individual;

JUSTIN STEVEN MONTOYA GONZALEZ, an individual;

MARIA ALEJANDRA GUTIERREZ, an individual;

RYAN HALVORSEN, an individual;

MAYRA HALVORSEN, an individual;

KIMBERLY HAMPTON, an individual;

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

AMANDA HARMON, an individual;

JEANETTE HARMON, an individual;

TIMOTHY HARMON, an individual;

ALIDA HASIMU, an individual;

DONALD HENDRICKS, an individual;

NATASHA HOLLOWAY, an individual;

GAVIN HOLLOWAY, an individual;

ELLA HOLLOWAY, an individual;

GRAYSON HOLLOWAY, an individual;

CRU HOPPE, an individual;

JAXX HOPPE, an individual;

KEVIN HOPPE, an individual;

DANIEL HOUK, an individual;

TANYA HOWARD, an individual;

BREANNE JAGIELLO, an individual;

JENNIE HEEJU JEONG, an individual;

PHILIP JEONG, an individual;

ERNEST JOHNSON, an individual;

CHRISTINA JOHNSON, an individual;

RON KAY, an individual;

JAMIE KAY, an individual;

ALICIA KAY, an individual;

KATHLEEN KEAN, an individual;

ANDY KEAN, an individual;

DIANA KESTENIAN, an individual;

KARINE KESTENIAN, an individual;

HOVSEP KESTENIAN, an individual;

ARMEN KESTENIAN, an individual;

DIANE KESTENIAN, an individual;

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

ANGELA KIM, an individual;

ERIC H. KIM, an individual;

KATIE S. KIM, an individual;

ISAAC W. KIM, an individual;

IAN M. KIM, an individual;

CHARLES KYUNGCHUN KIM, an individual;

JONGSOOK KIM, an individual;

GRACE BOOYOUNG KIM, an individual;

JOEL KIM, an individual;

LINDA KIM, an individual;

RYAN KIM, an individual;

KAP B. KIM, an individual;

AE S. KIM, an individual;

KAREN KIM, an individual;

JACQUELINE KIM, an individual;

JEFFREY KIM, an individual;

SHAKE' KONTOGIANNIS, an individual;

KAISER KUREXI, an individual;

SOON HO KWON, an individual;

EUN HA KWON, an individual;

ABIGAIL KWON, an individual;

GRISHA LACHINIAN, an individual;

ROMINA LACHINIAN, an individual;

CLOUDIA LACHINIAN, an individual;

JOAN LARSEN, an individual;

ALEX LARSEN, an individual;

MIKYEONG LEE, an individual;

HUCKJIN LEE, an individual;

HUNSEO LEE, an individual;

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1  JAHUN LEE, an individual;

2  CHRISTEN LEE, an individual;

3  EUN CHAN LIM, an individual;

4  JOSEPH LIM, an individual;

5  GRACE LIM, an individual;

6  OTILIA EUYOQUE LOPEZ, an individual;

7  MIGUEL ANGEL LOPEZ MARTINEZ, an individual;

8  CARLOS LOPEZ SANTANA, an individual;

   CARLIE LOSORELLI, an individual;

9  JOE LOSORELLI, an individual;

10 PHYLLIS LOSORELLI, an individual;

11 IAN LOSORELLI, an individual;

12 ERIC LOUZIL, an individual;

13 KEVIN LUNA, an individual;

14 JOSHUA MADRIGAL, an individual;

15 ENRIQUE MADRIGAL, an individual;

16 EVANGELINA MADRIGAL, an individual;

17 PATTY MADRIGAL, an individual;

18 MIGUEL ANGEL MARTINEZ JR, an individual;

19 BRENDA MARTINEZ, an individual;

20 LISA KAREN MASALONIS, an individual;

21 STEVEN MAZOR, an individual;

22 CAMILLE MAZOR, an individual;

23 MICHELLE MCSHERRY, an individual;

24 REBECCA J MEALER, an individual;

25 WILLIAM B MEALER, an individual;

26 BABE RUTH CLEMENTE MENDOZA, an individual;

27 RIO GABRIEL VILLANUEVA MENDOZA, an individual;

   CHRISTOPHER JAMES SCHROEDER MINGHELLI, an individual;

28

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1  SUKYOUNG MOON, an individual;

2  JOHN PETER MORALES, an individual;

3  TAYLOR JONELLE MORAN, an individual;

4  LUIS MORENO, an individual;

5  TOMAS A MORENO, an individual;

6  RACHELLE J MORENO, an individual;

7  DENNIS MORLAN, an individual;

8  ZHANNA NARINYAN, an individual;

9  RONNIE LEE ODELL, an individual;

10  SUNG MIN OH, an individual;

11  RYAN OH, an individual;

12  KATELYN OH, an individual;

13  GARY MICHAEL ORTEGA, an individual;

14  JOSE CABRERA PADILLA, an individual;

15  CHI POK PARK, an individual;

16  DO YOUNG PARK, an individual;

17  SARAH J PARK, an individual;

18  AUSTIN PARK, an individual;

19  ANGIE KIM PARK, an individual;

20  SUN YOUNG PARK, an individual;

21  JULIE PARK, an individual;

22  PHILIP PERERA, an individual;

23  STEPHEN DINESH PERERA, an individual;

24  DUSHANTHIE PERERA, an individual;

25  JUANLUIS PEREZ, an individual;

26  DIEGO ARIEL PEREZ, an individual;

27  EDGAR URIEL PEREZ, an individual;

28  MARIA TERESA LUGO PEREZ, an individual;

ANNEL PINEDA, an individual;

7

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1  LUIS DIEGO PINEDA, an individual;

2  CHRISOPHER PROUTY, an individual;

3  JENNIFER PROUTY, an individual;

4  ROSENDO MANRIQUE RAMIREZ, an individual;

5  MARICRUZ RAMIREZ MUÑIZ , an individual;

6  ROSA ISELA MUÑIZ RAMIREZ , an individual;

7  MARISSA CHRISTIAN RAUDA, an individual;

8  KEVIN TYLER REDMAN, an individual;

9  NUVIA REVELES, an individual;

10  SALVADOR ROBLES JR, an individual;

   MELVIN EDGARDO RODRIGUEZ, an individual;

11  TAWNY RODRIGUEZ, an individual;

12  DAVID RODRIGUEZ, an individual;

13  TERESA RODRÍGUEZ, an individual;

14  OMAR RODRÍGUEZ, an individual;

15  BRANDY ROGGENTIEN, an individual;

16  MEGAN ROGGENTIEN, an individual;

17  GERARDO RUELAS, an individual;

18  JUANA RUELAS, an individual;

19  ANTONIO RUELAS, an individual;

20  NANCY-MARIE RUIZ, an individual;

21  SONDRA SALAS, an individual;

22  OSCAR SALAS, an individual;

23  SAUL DOMINGUEZ SANCHEZ, an individual;

24  KEEGAN J. SCHAUMLOEFFEL an individual;

25  MAKENA M. SCHAUMLOEFFEL, an individual;

26  MARISOL A SERRANO, an individual;

27  KUREXI SHAWUTI, an individual;

   ELLIOTT LOU SHEPARD, an individual;

28

8

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

SUNMI SHIM, an individual;

JUNSEOK SHIM, an individual;

RACHEL SHIM, an individual;

JANE SMOCK, an individual;

JOHN SMOCK, an individual;

BYUNGGYUN SO, an individual;

JEREMIAH SO, an individual;

YOONJOO SO, an individual;

JUAN GABRIEL SUAREZ SANCHEZ, an individual;

JOHN SUK, an individual;

MINDY SUK, an individual;

ERIN SUK, an individual;

HUGO SUTO TORRES, an individual;

JOSE RODOLFO VASQUEZ TZUBAN, an individual;

MIGUEL ANGEL VALADEZ-NUNGARAY, an individual;

CRYSTAL VALDEZ, an individual;

ESEQUIEL VALDEZ, an individual;

LAURA VELAZQUEZ, an individual;

HERACLIO VELAZQUEZ, an individual;

JAELYN VILLANUEVA, an individual;

WENDELL CURTIS WILLIAMS SR, an individual;

JOHN PATRICK YERKES, an individual;

STEVE YEWELL, an individual;

RACHEL ZAVALA, an individual;

ALEX ZUBIATE, an individual;

JESSICA ZUBIATE, an individual;

CATALINA ZUBIATE, an individual;

ELIAN ZUBIATE, an individual;

AMANDA ZWART, an individual;

9

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

COME NOW the PLAINTIFFS SCOTT BENJAMIN SIEGAL, an individual; THOMAS LEE TATE, an individual; ISABELL DOLORES PALOMINO, an individual; RUFINO JUAREZ, an individual; BRAD KENNETH BECKER, an individual, et. al. bring this action against DEFENDANTS CHIQUITA CANYON, LLC, a Delaware Limited Liability Company; CHIQUITA CANYON, INC., a Delaware Corporation; WASTE CONNECTIONS US. INC., a Delaware Corporation; AMERESCO CHIQUITA CANYON ENERGY LLC, a Delaware Limited Liability Company; STEARNS, CONRAD AND SCHMIDT CONSULTING ENGINEERS, INC. (dba SCS ENGINEERS), a Virginia Corporation; ULTRASYSTEMS ENVIRONMENTAL, INC., a California Corporation; and DOES 1 through 150, inclusive, and each of them (collectively "Defendants"). PLAINTIFFS' allegations are based upon personal knowledge as to Plaintiffs' own experiences and on information and belief as to all other matters based on an investigation by counsel, such that each allegation has evidentiary support or is likely to have evidentiary support upon further investigation and discovery:

## I.    NATURE OF THE CASE

1.      PLAINTIFFS are informed and believe and allege herein that they were exposed to elevated levels of methane, hydrogen sulfide, benzene, and/or other noxious fumes, liquids, particulates and/or odors in their homes and communities for an extended period of time, causing them harm, as a direct and proximate result of DEFENDANTS' negligent and reckless ownership, operation, maintenance, inspection, misrepresentations and/or control over the Chiquita Canyon Landfill ("CCL").  Plaintiffs' property has suffered and will continue to suffer a diminution in value by virtue of invasions of noxious gases, pollutants and contaminants, its proximity to the CCL, and by the stigma associated with being located so near to the CCL.

2.      Plaintiffs bring this action to recover compensatory damages associated with their exposure to noxious fumes, liquids and odors from the CCL, damages and harm to their properties and/or quiet use and enjoyment, as well as for punitive damages, and for injunctive relief.

## A.    CCL's Expanding Heating/Smoldering Fire Event And Increasing Buildup, Pressure And Release Of Toxic Fumes, Substances and Odors Into The Community

3.      CCL is currently experiencing a continuing and worsening subsurface reaction across a significant portion of the landfill that is causing increased temperatures, increased production and

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

release of landfill gases, and increased production of leachate, as well as seepage and emissions of landfill gases and contaminants from the landfill.  Areas of the landfill affected by the reaction and release and seepage of toxic gases, leachate and materials are located approximately 1000 feet from the nearest resident in the surrounding community and are in proximity to thousands of persons, including young school age children, the elderly, and persons with compromised medical conditions.

4.    In 2023 alone, almost 6,800 complaints of noxious and potentially dangerous exposure to landfill gas odors have been made covering communities located in and around the CCL, including the communities of Val Verde, Hasley Canyon, Hillcrest, Williams Ranch, North Bluffs and Live Oak.  The dangerous and unhealthy conditions impacting PLAINTIFFS and the communities surrounding CCL are only worsening over time.

5.    PLAINTIFFS and other residents from the surrounding community have been forced indoors and/or to limit outdoor activities to attempt to minimize exposure to the elevated levels of hydrogen sulfide, noxious fumes, contaminants and odors which pollute their community from the CCL.  The toxic and unhealthy conditions emanating from CCL have restricted daily life activities, exercising, taking walks, gardening and/or working or playing outdoors.   Outdoor activities have been halted or limited at Hasley Equestrian Center, Hasley Canyon Park, or Val Verde Park and at neighboring schools such as Castaic Elementary School, Santa Clarita Valley International School and Live Oak Elementary School.  PLAINTIFFS and other adults and children  in the community are unable to enjoy their daily activities as the noxious odors and elevated levels of toxic gases prevent them from spending time outdoors and have the potential to increase their risk of developing cancer and other diseases and physical ailments.

6.    CCL is experiencing an Elevated Temperature Landfill ("ETLF") event where steaming-hot, contaminated leachate is surged to the surface, oozing out of fissures. These hazardous sprays, spills and discharges have formed bubbling ponds and "rivers of odorous waste," that are escaping into the community and, at times, this polluted water has aerosolized and erupted with such force that has it has shot into the air like a geyser.  According to a California Department Of Toxic Substance Control notice dated February 15, 2024, CCL is generating at least approximately 200,000 gallons of contaminated, toxic-laced leachate per day, much of which is

spreading, drifting and/or migrating into the community where PLAINTIFFS live and/or work.

7.     One of these pollutants released from CCL, hydrogen sulfide, is a highly toxic and malodorous environmental contaminant most commonly associated with sewage. Thousands of individuals – including PLAINTIFFS herein – experienced and complained of exposure to elevated levels of methane, hydrogen sulfide, noxious fumes and odors.  Hydrogen sulfide is known to cause headaches, nausea, respiratory issues, and other illnesses.

8.     Another one of these pollutants found in the contaminants being released from CCL into PLAINTIFFS' community is benzene.  Benzene is a known, highly toxic substance and carcinogen that can cause a breakdown of red blood cells, excessive bleeding, anemia and impair the human immune system, thereby increasing the risk of infection.

9.     The release of contaminated leachate, gases and particulates through the air, soils and water has worsened in a slow-motion disaster that shows no signs of abating.  DEFENDANTS have set in motion an unmitigated environmental calamity that is physically invading and trespassing onto bodies and properties of PLAINTIFFS and causing bodily and personal injury and/or property damage to  PLAINTIFFS and the region surrounding the CCL.

**B.     Defendants have Recklessly Disregarded the Toxic Exposure of Hazardous Gas, Liquids and Odors to Residents Neighboring the Facility**

10.     In late 2023 CCL Defendants acknowledged the gas and leachate releases, although Defendants had knowledge that the hazardous releases and spills had been occurring since at least mid-2022.    However, Defendants concealed, misrepresented and/or neglected the defects and dangers at the CCL causing the release and dispersal of contaminants in the community.

11.     Indeed, despite ongoing defects, violations and releases of contaminants through the end of 2022 and into 2023, the 2Q 2023 report of Defendant UEI, the monitoring company paid for by CCL Defendants to perform inspections for the benefit of PLAINTIFFS and other members of the community, claimed that "t]he landfill is actively working toward being fully compliant with conditions and/or mitigation measures, with no landfill operations non-compliant conditions observed during site visits" and noted only minimal concerns such as the delay in relocating the physical entrance to the CCL facility.

12.     PLAINTIFFS are informed and believe that Defendants concealed and/or

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

misrepresented major deteriorations, defects and failures regarding landfill cover integrity issues, increased temperatures and pressures in the landfill gas control systems and waste mass, oxygen intrusion above 5% by volume, excessive landfill gas and subsurface temperatures, elevated carbon monoxide concentrations, unusual landfill settlements, damaged gas wells, poor gas well performance, growth of the reaction area at the CCL, and expansion of the heating/smoldering event, with resulting additional gas pressure, noxious odors, elevated well and leachate temperatures and damage to the gas extraction system.  This negligent and/or reckless conduct further exacerbated and substantially contributed to new and worsening harms to PLAINTIFFS and the community, and injuries to their bodies and property.

13.    Defendants have deliberately, recklessly and/or negligently failed to contain and/or prevent the release of landfill gas, leachate, and associated surface emissions at CCL, which have caused contaminated odor, particulates, leachate and other unlawful emissions from the landfill onto PLAINTIFFS and/or their properties.  Defendants have also failed to comply with, and have frustrated, the efforts of various state and local agencies and monitoring authorities to gather information and monitor the condition of CCL, including but not limited to SCAQMD and Los Angeles Fire and Hazmat agents.

14.    On October 17, 2023, SCAQMD, in coordination with Los Angeles Fire and Hazmat agents, conducted an unannounced inspection and attempted to collect samples of the leachate exposed to the air from Defendants' property.  PLAINTIFFS are informed and believe that CCL Defendants denied access to the agents and did not allow them to collect samples of the leachate. Of the samples that SCAQMD was able to collect and test from neighboring areas close to CCL, results indicated elevated concentrations of benzene, a cancer-causing chemical.

15.    Around that time, SCAQMD requested real-time access to Defendants' Community Air Monitoring ("CAM") network, which Defendants must maintain as a condition of the Conditional Use Permit allowing them to operate the landfill.  By January 10, 2024, SCAQMD Monitoring and Analysis Division staff had been given real-time access to some, but not all, of the air monitors within Defendants' CAM network. A review of CCL's air monitoring data showed approximately 35% of all hydrogen sulfide (H2S) readings over the past year exceeded the

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

California state standard of 30 parts per billion (ppb), averaged over one hour.

16.    SCAQMD Inspectors continued to routinely observe leachate exposed to the ambient air. Inspectors observed leachate at times spraying, bubbling or boiling, free flowing from the surface of the landfill, pooling at the landfill, channeling through soil at the landfill, and flowing to concrete lined drainage where Defendants had installed check dams to prevent the leachate from leaving CCL.

17.    On some inspections, SCAQMD Inspectors observed leachate shooting into the air like a geyser. Where the leachate was discharged it flowed and channeled across the landfill, forming bubbling ponds of waste and saturating the surrounding soil. The leachate-saturated soil also emitted a foul-smelling odor. In several instances, SCAQMD Inspectors observed that Defendants did not take immediate actions to remediate either the leachate or the saturated soil prior to the leachate reaching the concrete channels.

## II.    JURISDICTION AND VENUE

18.    Venue is proper in the Superior Court of Los Angeles, State of California pursuant to California Code of Civil Procedure §§ 393 and 395 because Los Angeles County is where the subject incident and injuries occurred, where the PLAINTIFFS reside, where CCL is located, and where the obligation and liability arose for Defendants.

19.    The CCL is located in the northern portion of Los Angeles County at 29201 Henry Mayo Drive in Castaic, California. It is operated under a conditional use permit ("CUP") issued by the County of Los Angeles. CCL is an approximately 639-acre landfill and was first approved for waste disposal in 1967. It has been used as a landfill since 1972 and has operated under renewed and/or amended CUPs to allow for continued operations and expansion of CCL.

20.    The CCL includes operations that permit the acceptance of non-hazardous solid waste for disposal and that prohibit CCL from accepting hazardous waste that is ignitable, corrosive, reactive or toxic. Defendants also operate and are required to inspect, control and/or maintain in a safe and reasonable manner a landfill gas collection and control system that includes vertical and horizonal gas collection wells and associated piping and trenches, multiple collection headers and

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

blowers for venting landfill gas, a landfill gas treatment system, a condensate/leachate collection and storage system and flares that combust landfill gas. All of these operations are contained within the CCL facility in Castaic.

21.    The federal courts do not have subject matter or removal jurisdiction over this case and, therefore, it is not removable. Specifically, pursuant to 28 U.S.C. § 1441(b), this action is not removable and the Superior Court of the County of Los Angeles, State of California has jurisdiction of this case since at all times relevant to this action defendants did business in and provided services in the County of Los Angeles, State of California at a landfill located in this County. Also there is not complete diversity of citizenship in that some Defendants maintained their nerve center operations and/or incorporation in the State of California. In addition, no federal question is involved in this action. As such, any removal of this case to federal court would be wrongful and done solely for the purposes of delay. Therefore, should one or more of the Defendants seek to improperly remove this case to federal court, PLAINTIFFS will oppose such improper removal and seek the remand of this action.

22.    Defendants, and each of them, purposely availed themselves of the benefits, protections and privileges of the laws of the State of California in conducting their business and have purposely directed their activities in this State.

23.    This Court has jurisdiction of this action because the Plaintiffs seek damages which are in excess of this Court minimum jurisdictional limits and because Defendants conduct business in, and Plaintiffs' causes of action arose in, the County of Los Angeles, State of California.

### III.    **PARTIES**

#### A.    **Plaintiffs**

24.    PLAINTIFFS are individuals who, at all times relevant to this action, resided and/or worked in the areas impacted by the formation and release of hazardous chemicals, contaminants, liquids, particulates, and noxious fumes, including hydrogen sulfide, near the CCL. PLAINTIFFS have all suffered damages, losses, and harm as a result of exposure to the noxious gases including, but not limited to, physical injury, fear of future physical injury, increased risk of

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

future injury, including the need for medical monitoring, emotional distress, damages to real and personal property, medical expenses, relocation expenses, and other economic damages.

**B.     Defendants**

25.     CHIQUITA CANYON, LLC is a Delaware Limited Liability Company. CHIQUITA CANYON, LLC and its subsidiaries and its predecessors constructed, operated or maintained the CCL located at 29201 Henry Mayo Dr. Castaic, California 91384.

26.     CHIIQUITA CANYON INC. is a Delaware Company. CHIQUITA CANYON INC. and its subsidiaries and its predecessors constructed, operated or maintained the CCL located at 29201 Henry Mayo Dr. Castaic, California 91384.

27.     WASTE CONNECTIONS US, INC. is a Delaware Company. WASTE CONNECTIONS US, INC. and its subsidiaries and its predecessors constructed, operated or maintained the Chiquita Canyon Landfill located at 29201 Henry Mayo Dr. Castaic, California 91384.

28.     CHIQUITA CANYON, LLC, CHIQUITA CANYON, INC., WASTE CONNECTIONS US, INC., and DOES 1 through 25 are collectively referred to as the "CCL Defendants."  There is a unity of interest and ownership between the CCL Defendants, such that any individuality and separateness between them has ceased, and each such entity is the alter ego of each other entity.

29.     AMERESCO CHIQUITA CANYON ENERGY LLC ("ACCE") is a Delaware Limited Liability Company with its principal place of business located on site at CCL. PLAINTIFFS are informed and believe that ACCE, along with other Defendants herein, controls, owns and/or operates some significant portions of the landfill gas collection and control systems at CCL, including those portions that are defective as alleged in this complaint and which, as alleged herein, have seriously and substantially failed, causing property damage, bodily injury, interference to quiet use and enjoyment, and other personal injuries to PLAINTIFFS and other members of the public.

16

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

30.     STEARNS, CONRAD AND SCHMIDT CONSULTING ENGINEERS, INC. (dba SCS ENGINEERS) ("SCS") is a Virginia Corporation with its corporate headquarters and nerve center located in Long Beach, California.  PLAINTIFFS are informed and believe that for over 20 years, SCS has been responsible for operating and maintaining the landfill gas collection and control system at the CCL, including but not limited to construction, as well as operations and maintenance and other equipment and property related to the CCL's landfill gas collection and control system, the CCL's gas wellfield dewatering system, as well as the CCL's leachate and condensate management and storage system, which, as alleged herein have seriously and substantially failed, causing property damage, bodily injury, interference to quiet use and enjoyment, and other personal injuries to PLAINTIFFS and other members of the public.

31.     ULTRASYSTEMS ENVIRONMENTAL, INC. ("UEI"), is a California Corporation with its corporate headquarters and nerve center located in Irvine, California. PLAINTIFFS are informed and believe that UEI was paid for by CHIQUITA CANYON, LLC to perform monitoring inspections for violations of conditions mandated for the operation of CCL and for the benefit of the public.  PLAINTIFFS are informed and believe that UEI not only failed to perform as required but it also affirmatively and/or negligently misrepresented the dangerous conditions of the CCL and/or concealed the reckless and/or negligent conduct and actions of the Defendants causing harm to PLAINTIFFS and other members of the public.

32.     The names of the other Defendants and/or their involvement in Plaintiffs' situation are unknown to Plaintiffs who therefore sue such Defendant in this action by fictitious names, identified as DOES 1 through 150.  Each of the Defendants designated as a Doe is legally responsible in some manner for the unlawful acts described above. Plaintiffs will seek leave of the Court to amend this complaint to reflect the true names and capacities of the Defendants designated as Does 1 through 150 when their identities and/or involvement become known.

33.     The identities and capacities of Defendants DOES 1 through 150 are currently unknown to Plaintiffs. Said Defendants are therefore sued by such fictitious names as individuals or entities of unknown form and of unknown capacity who, upon information and belief, are parties whose acts and/or omissions caused or contributed to cause the tortious conduct set forth in

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

this pleading and who proximately and legally caused the resulting injuries and damages to Plaintiffs as alleged herein. When the true names and capacities of the Defendants sued herein as DOES are ascertained, Plaintiffs will amend this action accordingly. Whenever this complaint references acts of any Defendant or one of its unnamed agents or co-conspirators, such allegation shall be deemed to mean the act of all other Defendants, unless the reference is in a particular cause of action, and each of them acting, individually, jointly, and severally.

34.     Each Defendant committed, conspired to commit, and/or ratified each of the acts and omissions alleged in this complaint. Defendants CHIQUITA CANYON, LLC, CHIQUITA CANYON, INC., WASTE CONNECTIONS US, INC., AMERESCO CHIQUITA CANYON ENERGY LLC, STEARNS, CONRAD AND SCHMIDT CONSULTING ENGINEERS, INC. (dba SCS ENGINEERS), ULTRASYSTEMS ENVIRONMENTAL, INC., and DOES 1 through 150, inclusive, and each of them, were the agents, servants, employees and/or joint venturers of each other and were acting within the course and scope of their agency, service, employment and joint venture. All acts performed by Defendants, and each of them, while acting as an agent, servant, employee and/or joint venturer have been adopted and ratified by all other Defendants, and each of them. Consequently, said Defendants are jointly and severally liable to the PLAINTIFFS for the injuries and damages sustained as a proximate result of their conduct.

## IV.    ADDITIONAL FACTUAL BASIS FOR THE CLAIMS ASSERTED

### A.    Background

35.     At all relevant times herein, the PLAINTIFFS, collectively, resided and/or worked in neighboring communities to the CCL including but not limited to, Val Verde, Hasley Canyon, Williams Ranch, Hasley Hills, Live Oak, North Bluffs, Hillcrest, Stevenson Ranch and Santa Clarita. The PLAINTIFFS given their proximity to the CCL, were sickened and injured as a result of the exposure to the noxious fumes and odors.  PLAINTIFFS with property in proximity to the CCL also sustained property damage and/or a loss of use and/or quiet enjoyment of their property.

36.     The CCL is located within 500 yards of residences and public facilities and the noxious odors, contaminants and gases have migrated and trespassed onto locations where PLAINTIFFS and other members of the community reside and/or work.  CCL's close proximity to

heavily populated residential areas, schools and other gathering places assures that it's defective and unreasonably dangerous conditions and releases of toxic and noxious gases and contaminants are causing significant harm, bodily injury, interference and disruption to the health, safety and wellbeing of PLAINTIFFS and others.

37. In or about 1997, Defendants by and through their predecessors signed an agreement with the Val Verde Civic Association in which they agreed to close the Landfill no later than 2019 or when disposed tonnage reached 23 million tons.

38. On July 25, 2017, the County of Los Angeles approved another CUP allowing the Defendants to expand and operate for another 30 years. The expansion included increasing the waste footprint from 257 acres to 400 acres, increasing the maximum elevation from 1,430 to 1,573 feet and increasing the daily disposal limits from 6,000 tons per day to 12,000 tons per day.

39. Under the terms of the CUP obtained by Defendants, CCL is required to comply with governmental health and safety requirements and avoid being a nuisance to the community.

**B. Investigations Conducted by Governmental Entities in 2023 and 2024 Establish Violations At CCL And That Residents within Four Miles of CCL are Exposed to Noxious Gases**

40. SCAQMD is responsible for taking reports of nuisance, confirming these reports and issuing Notices of Violation (NOVs) where there is a violation of the law.

41. In 2023, the SCAQMD received more than 7,000 resident complaints of an odor nuisance with the CCL as the source. SCAQMD has issued approximately 110 NOVs against CCL for public nuisance in violation of the agency's Rule 402 and California Health and Safety Code Section 41700.

42. SCAQMD Rule 402 and California Health and Safety Code Section 41700 prohibit the discharge, from any source whatsoever, of such quantities of air contaminants or other materials which cause injury, detriment, nuisance, or annoyance to any considerable number of persons or the public, or which cause, or have the natural tendency to cause, injury or damage to business or property.

43. Pursuant to SCAQMD's policies and practices, to establish a violation of Rule 402, the

agency must receive three calls to their hotline within an hour to dispatch an investigator. If an investigator is able to confirm at least 6 complaints in a 24-hour period, then a NOV is issued.

44.     SCQMD issued NOVs to Defendants under Rule 402 and other Agency Rules on May 18, 2023, June 25, 2023, June 27, 2023, June 28, 2023, June 29, 2023, June 30, 2023, July 2, 2023, July 3, 2023, July 7, 2023, July 10, 2023, July 11, 2023, July 13, 2023, July 15, 2023, July 16, 2023, July 17, 2023, July 18, 2023, July 19, 2023, July 20, 2023, July 21, 2023, July 22, 2023, July 23, 2023, July 24, 2023, July 26, 2023, July 27, 2023, July 28, 2023, July 29, 2023, July 30, 2023, July 31, 2023, August 1, 2023, August 2, 2023, August 3, 2023, August 4, 2023, August 5, 2023, August 6, 2023, August 7, 2023, August 9, 2023, August 10, 2023, August 11, 2023, August 12, 2023, August 13, 2023, August 14, 2023, August 15, 2023, August 16, 2023, August 17, 2023, August 18, 2023, August 19, 2023, August 21, 2023, August 23, 2023, August 24, 2023, August 25, 2023, August 27, 2023, August 28, 2023, August 29, 2023, August 30, 2023, August 31, 2023, September 1, 2023, September 5, 2023, September 6, 2023, September 7, 2023, September 8, 2023, September 12, 2023, September 13, 2023, September 14, 2023, September 15, 2023, September 19, 2023, September 20, 2023, September 21, 28 2023, September 22, 2023, September 25, 2023, September 26, 2023, September 27, 2023. September 28, 2023, October 2, 2023, October 3, 2023, October 5, 2023, October 6, 2023, October 9, 2023, October 10, 2023, October 13, 2023, October 16, 2023, October 20, 2023, October 23, 2023, October 25, 2023, October 26, 2023, October 27, 2023, November 2, 2023, November 6, 2023, November 10, 2023, November 13, 2023, November 15, 2023, November 16, 2023, November 28, 2023, November 29, 2023, November 30, 2023, December 6, 2023, December 7, 2023, December 12, 2023, December 18, 2023, December 22, 2023, December 27, 2023, December 29, 2023, January 3, 2024, and January 9, 2024.

45.     During the time of increased complaints, CCL was and is still currently experiencing a subsurface reaction in an inactive portion of the landfill that is causing increased temperatures, increased production of landfill gas, and increased production of leachate, as well as fugitive emissions of landfill gas from the surface of the landfill. The area of the landfill affected by the reaction is located approximately 1,000 feet from the nearest resident in the surrounding community.

46.     Between May and September 5, 2023, SCAQMD issued 58 NOVs against Defendants

for violating SCAQMD Rule 402 and California Health and Safety Code Section 41700. In light of the NOVs and complaints, SCAQMD's Hearing Board issued an Order for Abatement which outlined practices and procedures in an attempt to resolve the issues.

47.    The Order for Abatement was ineffective. Between September 6, 2023, and January 11, 2024, SCAQMD received 4,860 complaints alleging CCL as the source of odors. SCAQMD responded to and investigated the complaints, including verifying the existence of complained-of odors and identifying the source of the complaints as CCL. Over this time period, Defendants received 46 NOVs for violations of SCAQMD Rule 402 and California Health and Safety Code Section 41700.

48.    In early October 2023, SCAQMD learned of the existence of leachate seeping out from the area of the landfill affected by the subsurface reaction. SCAQMD inspectors conducted an inspection and confirmed that leachate had seeped out of the landfill and pooled in a concrete-lined stormwater channel adjacent to the area of the landfill affected by the reaction. SCAQMD inspectors observed that the leachate gave off a foul odor, which inspectors determined was contributing to and worsening the alleged public nuisance.

49.    In early October 2023, SCAQMD learned of the existence of leachate seeping out from the area of the landfill affected by the subsurface reaction. SCAQMD inspectors conducted an inspection and confirmed that leachate had seeped out of the landfill and pooled in a concrete-lined stormwater channel adjacent to the area of the landfill affected by the reaction. SCAQMD inspectors observed that the leachate gave off a foul odor, which inspectors determined was contributing to and worsening the alleged public nuisance.

50.    On October 31, 2023, Defendants submitted the results of an initial flux chamber study. The results of the study concluded that if the emissions observed during the study held constant for an entire year, a total of around 43,000 tons per year of uncontrolled/fugitive surface emissions would be produced at CCL. Of those emissions, approximately 9.33 tons per year would be benzene, and approximately 100 tons per year toxic organics.

51.    In November 2023, SCAQMD also cited the facility for failure to maintain the leachate collection and storage system in good operating condition, failure to report the breakdown of equipment, failure to submit a landfill excavation plan, and violations of other permit and conditional

use conditions. Leachate was observed on numerous occasions bubbling, boiling, or shooting out like a geyser. The pooled and flowing liquid was observed seeping out of the soil and causing additional foul-smelling odors.

52.     On several successive inspections, SCAQMD inspectors continued to routinely observe leachate exposed to the ambient air. Inspectors noted leachate at times bubbling or boiling, free flowing from the surface of the landfill, pooling at the landfill, channeling through soil at the landfill, and flowing to concrete lined drainage.

53.     On several instances, SCAQMD inspectors observed that Defendants did not take immediate actions to remediate either the leachate or the saturated soil prior to the leachate reaching the concrete channels.

54.     SCAQMD' s Monitoring and Analysis Division compiled and reviewed continuous monitoring data from six monitors in Defendants' Community Air Monitoring network, all located within the affected communities. The monitors collect real-time data for hydrogen sulfide ("H2S") and particulate matter. Based on review of H2S continuous monitoring across all six monitors, SCAQMD determined that approximately 35% of all hourly average readings over the past year exceeded the California Office of Environmental Health Hazard Assessment ("OEHHA") acute standard of 30 parts per billion ("ppb") on a 1-hour average. Some readings, across a 1-hour average, exceeded 300 ppb, ten times the OEHHA standard. The highest single reading exceeded 500 ppb. SCAQMD Monitoring and Analysis staff concluded from this data review that there was clear indication that air emissions from CCL were having significant impact to the community.

55.     The Los Angeles County Department of Public Health also received monitoring data of these community monitoring stations around CCL, including, eventually, real-time access to this data. Dr. Nichole Quick, the Department's Deputy Director for Health Protection, reviewed the data and concluded that, if assumed accurate, it showed evidence that there were likely health impacts observed in the community due to H2S exposure. Dr. Quick noted that physiological health impacts of H2S at the I-hour acute standard of 30 ppb would often include headaches, nausea, and respiratory irritation. Dr. Quick observed that because the data from communities around CCL indicated significant exceedances of the 30-ppb standard, symptoms could be more prolonged or intense.

56.     On October 17, 2023, SCAQMD in coordination with the LA Fire/Hazmat agents, conducted an unannounced inspection and attempted to collect samples of the leachate exposed to the air from Defendants' property. Defendants denied access to collect samples of the leachate. SCAQMD collected air samples at both the fence line and within the nearby community at that time. SCAQMD Monitoring and Analysis staff tested the samples within 24-hours and reviewed the laboratory results. Of those reviewed, several indicated levels of benzene above expected background levels, but below the 8-hour acute standard of 8ppb set by OEHHA.

57.     At least one sample result, collected on November 6, 2023, reported the benzene level well above the 8-hour acute standard, measured at 69.5 ppb. SCAQMD learned about the result on December 8, 2023 (though the lab report was dated November 9, 2023). SCAQMD Monitoring and Analysis staff discussed this result with the third-party lab that performed the analysis to inquire about potential anomalies in the lab methods. The third-party lab confirmed the validity of the results.

58.     Based on review of the laboratory sample reports made available to SCAQMD, Dr. Quick concluded that there is ample evidence supporting health impacts to the community from air contaminants from CCL.

**C.     Conclusion *of SCAOMD Investigation***

59.     The SCAQMD has found that a subsurface reaction over an approximately 30-acre portion of CCL is the source of significant odors, which are causing injury, detriment, nuisance and/or annoyance to residents located in neighboring communities.

60.     Defendants are also in violation of Rule 430, Rule 3002(c)(l) and Rule 203(b) for failing to report a breakdown to the SCAQMD in equipment which causes a violation of a rule of regulation of the SCAQMD. Defendants failed to maintain the full and proper working order of the leachate collection system, as required by Defendants' leachate collection system permit. Fully and properly operated, the leachate collection system captures leachate and collects it subsurface. However, leachate has been and continues to evade the leachate collection system, is exposed to ambient air, and is only collected by separate, external trucks, which are not part of Defendants' leachate collection system. Accordingly, the SCAQMD's Hearing Board concluded that there has been, and is an ongoing, breakdown in Defendants' leachate collection system.

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

61.     On January 17, 2024, Defendants were issued an Order for Abatement and the Hearing Board Order Defendants to take significant actions such as:

a.      Immediate Leachate Collection: Twice daily inspections for leachate and the immediate removal of any pooling or ponding liquid in a sealed tank/truck.

b.      Excavation Plan and Interim Mitigation: Submit a complete excavation plan that includes proper management of soil, methane monitoring, dust suppression, and the immediate relocation of an excavated soil from the property, Until the plan is approved, the landfill must undertake interim mitigation measures to limit odor and fugitive dust during excavating activities.

c.      Expand Collection and Extraction Wells: To collect gas and leachate as needed and properly cover wells to prevent leaks, as well as take precautions to avoid or limit escape of any liquids during well building or maintenance.

d.      Expanded Monitoring: Install continuous air monitors in the community where odors have reported for gases associated with landfills. Monitor for benzene and other volatile organic compounds (VOCs). Increase laboratory sampling in the community to 3 times per week until the monitors are in place. Take monthly samples of leachate at the reaction area, the areas with the highest temperature and the bottom of the tanks where leachate is stored. Conduct an additional study of surface air emissions from the landfill.

e.      Increased Transparency: Provide all past and current air monitoring data to SCAQMDF immediately for review. Develop a webpage to display real-time monitoring information within 30 days.

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

62.    In 2024, the SCAQMD issued CCL NOVs for violations of SCAQMD Rule 402 and California Health & Safety Code § 41700, triggering CCL's obligation to provide a report under CUP Condition 69.  SCAQMD issued CCL eighteen additional Rule 402 NOVs for violations that occurred in March and April 2024.

63.    CCL Defendants have received several additional NOVs in 2024 from other governmental agencies:

• On March 28, 2024, CCL Defendants received an NOV from the Los Angeles Regional Water Quality Control Board ("Water Board") for alleged violations of the State Water Resources Control Board's National Pollutant Discharge Elimination System ("NPDES") General Permit for Storm Water Discharges Associated with Industrial Activities amended November 6, 2018, and effective July 1, 2020 (Order No. 2014-0057-DWQ amended by 2015-0122-DWQ), NPDES No. CAS000001 ("IGP")..

• On March 29, 2024, CCL Defendants received a Summary of Violations ("SOV") from the Department of Toxic Substances Control ("DTSC"), alleging violations of the California hazardous waste control laws and their implementing regulations.

• On April 9, 2024, CCL Defendants received a second NOV from the Water Board for additional alleged violations of the IGP.

64.    PLAINTIFFS are informed and believe that CCL and the Defendants who currently own, control, operate, inspect and/or maintain CCL and its facilities continue to be in violation of health and safety laws, and continue to cause harm to PLAINTIFFS and members of the community, including risks of imminent and/or irreparable harm to the health and safety of PLAINTIFFS and their properties.  PLAINTIFFS are further informed and believe that governmental agencies and investigative bodies continue to cite Defendants and/or find violations with Defendants' facilities, operations, equipment and maintenance at CCL.

### D.    PLAINTIFFS' Injuries

65.    PLAINTIFFS are individuals and families who live, work, own and/or occupy property within the neighboring communities to the CCL, and given their proximity to the CCL, were sickened and injured as a result of exposure to the noxious fumes and odors.  The releases, emissions,

and/or migration of noxious odors, hazardous gases, chemicals, pollutants, and contaminants into PLAINTIFFS' land, homes, and/or their persons constitute an invasion of PLAINTIFFS' property that has substantially impaired PLAINTIFFS' use and enjoyment of both their property and all public property located in and around the CCL and surrounding communities.  PLAINTIFFS face increased risks of cancer due to the proximity and release of toxic gases, odors, particulates and liquids onto PLAINTIFFS and their properties and/or workplaces due to Defendants' negligence and/or reckless conduct.

66.     Defendants' failure to abate, control and manage the noxious chemicals, pollutants, gas and leachate has caused the release of hazardous gases, chemicals, pollutants, and contaminants into PLAINTIFFS' land, homes, and/or their persons.   Due to the high levels of hydrogen sulfide and other toxic air pollutants, PLAINTIFFS claim damages for physical injury (for which many have sought medical treatment), fear of future physical injury, increased risk of future injury, including the need for medical monitoring, emotional distress, harm to real and personal property, medical expenses, relocation expenses, and other economic damages.

67.     As a direct and legal result of the wrongful acts and/or omissions of Defendants, and each of them, PLAINTIFFS have suffered and will continue to suffer the loss of the quiet use and enjoyment of their property, as well as public properties located in the area, have suffered and will continue to suffer the diminution of the value of their property, and/or have been or will be required to expend monies to mitigate, repair, restore and/or relocate away from the property in efforts to offset the harmful and deleterious environmental and physical impacts of the CCL on their property, lives and well-being, all in an amount according to proof.

68.     PLAINTIFFS' injuries include but are not limited to, headaches, lightheadedness, dizzy spells, asthma, other breathing conditions, rashes, cancers, tumors, and other related symptoms, as well as other harms not yet known. Plaintiffs are informed and believe, and thereon allege, that some or all of the health effects may result in chronic and/or ongoing injuries.

## V.     BASIS FOR MEDICAL MONITORING DAMAGES

69.     Defendants have exposed PLAINTIFFS to excessive levels of hydrogen sulfide and other chemicals and toxins proven hazardous to human health.

70.    Defendants have also exposed PLAINTIFFS to environmental conditions proven hazardous to mental health.

71.    The exposure to these dangerous substances and conditions is such that PLAINTIFFS have been placed at an increased risk of contracting latent illness and disease, including but not limited to respiratory, cardiovascular, neurological, and mental health issues, and as such, require medical monitoring which Defendants are responsible for providing and paying for.

72.    Monitoring and testing procedures for respiratory, cardiovascular, and neurological disorders and other illnesses associated with exposure to hydrogen sulfide and other chemicals exist, as well as for mental health issues, which make the early detection and treatment of such diseases and health conditions possible and beneficial.

73.    Accordingly, PLAINTIFFS are entitled to compensatory damages for medical monitoring.

**VI.    CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

**NEGLIGENCE**

**(By Plaintiffs Against Defendants CHIQUITA CANYON, LLC, a Delaware Limited Liability Company; CHIQUITA CANYON, INC., a Delaware Corporation; WASTE CONNECTIONS US. INC., a Delaware Corporation; AMERESCO CHIQUITA CANYON ENERGY LLC, a Delaware Limited Liability Company; STEARNS, CONRAD AND SCHMIDT CONSULTING ENGINEERS, INC. (dba SCS ENGINEERS), a Virginia Corporation; ULTRASYSTEMS ENVIRONMENTAL, INC., a California Corporation; and DOES 1 through 150, inclusive)**

74.    PLANTIFFS incorporate by reference all allegations of preceding paragraphs 1 through 73 as though fully set forth herein.

75.    At all relevant time, Defendants and each of them, owned, operated, inspected, controlled, managed, and/or maintained CCL.

76.    At all relevant times prior to this incident, Defendants and each of them, had the duty

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

to exercise the utmost care and diligence in the ownership, design, operation, management, supervision, inspection, maintenance, repair, and/or control of CCL in compliance with relevant regulations and industry standards, so as not to cause harm to individual persons, private and public property, the environment, public resources, public health, and/or the comfortable use and enjoyment of property and life by the public.

77.     At all relevant times, Defendants and each of them, negligently, carelessly, recklessly, and/or unlawfully used, owned, operated, managed, supervised, maintained, repaired, and/or controlled CCL, including but not limited to (a) failing to implement reasonable safety and leak prevention practices; (b) failing to properly inspect, assess, and/or evaluate the integrity of CCL in compliance with applicable safety standards and regulations; (c) failing to warn of, respond to, repair, correct and/or address defects and/or dangerous conditions at CCL and with operations and/or equipment at CCL; and/or (c) failing to have an adequate and appropriate response plan to timely, adequately, promptly and properly respond to and contain defects, dangerous conditions and leaks.

78.     As a direct and legal result of the wrongful acts and/or omissions of Defendants, and each of them, PLAINTIFFS have suffered damages, including but not limited to inhalation of noxious and toxic gases, chemicals, and/or fumes resulting in personal injuries including, but not limited to, severe headaches, dizziness, difficulty breathing, and other harms known and as yet unknown. Upon information and belief, some or all of the health effects may result in permanent impairments and/or disabilities, all to their general damage in a sum according to proof.

79.     As a direct and legal result of the wrongful acts and/or omissions of Defendants, and each of them, PLAINTIFFS are required to, and continue to, employ physicians and/or other health care providers to examine, treat, and care for their injuries. PLAINTIFFS have incurred, and will continue to incur, medical and incidental expenses for such examination, treatment, rehabilitation, and care, all in an amount according to proof.

80.     As a direct and legal result of the wrongful acts and/or omissions of Defendants, and each of them, PLAINTIFFS have been put at risk for the development of latent health problems, such that they now require medical monitoring for such problems in the future.

81.     As a direct and legal result of the wrongful acts and/or omissions of Defendants, and

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

each of them, PLAINTIFFS have incurred, and will continue to incur, a loss of income and/or a loss of earning capacity, all in an amount according to proof at the time of trial pursuant to California Code of Civil Procedure § 425.10.

82.    As a direct and legal result of the wrongful acts and/or omissions of Defendants, and each of them, PLAINTIFFS have incurred, and will continue to incur, a loss of revenues and profits from the operation of their businesses, all in an amount according to proof at the time of trial pursuant to California Code of Civil Procedure§ 425.10.

83.    As a direct and legal result of the wrongful acts and/or omissions of Defendants, and each of them, PLAINTIFFS have suffered and will continue to suffer property damage, the loss of quiet use and enjoyment of their property, as well as public properties located in the area, have suffered and will continue to suffer the diminution of the value of their property, and/or have been or will be required to expend monies to repair and/or restore the property to its condition prior to the trespass, release and contamination of noxious and/or hazardous substances, odors, liquids and particulates from CCL and/or to relocate away from the CCL, all in an amount according to proof at the time of trial pursuant to California Code of Civil Procedure § 425.10.

## SECOND CAUSE OF ACTION

## NEGLIGENCE PER SE – VIOLATION OF CALIFORNIA HEALTH AND SAFETY CODE § 41700

**(By Plaintiffs Against Defendants CHIQUITA CANYON, LLC, a Delaware Limited Liability Company; CHIQUITA CANYON, INC., a Delaware Corporation; WASTE CONNECTIONS US. INC., a Delaware Corporation; AMERESCO CHIQUITA CANYON ENERGY LLC, a Delaware Limited Liability Company; STEARNS, CONRAD AND SCHMIDT CONSULTING ENGINEERS, INC. (dba SCS ENGINEERS), a Virginia Corporation; ULTRASYSTEMS ENVIRONMENTAL, INC., a California Corporation; and DOES 1 through 150, inclusive)**

84.    PLAINTIFFS incorporate by reference all allegations of the preceding paragraphs 1 through 83 as though fully set forth herein.

85.    Prior to and at all times relevant hereto, California Health and Safety Code Section

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

41700 was in full force and effect. That statute states, in pertinent part:

**41700 – Health and Safety Code**

(a) Except as otherwise provided in Section 41705, a person shall not discharge  from any source whatsoever quantities of air contaminants or other material that cause injury, detriment, nuisance, or annoyance to any considerable number of persons or to the public, or that endanger the comfort, repose, health, or safety of any of those persons or the public, or that cause, or have a natural tendency to cause, injury or damage to business or property.

86.     PLAINTIFFS were among the class of persons that California Health and Safety Code Section 41700 was intended to protect.

87.     At the time of the incident giving rise to this action, DEFENDANTS, and each of them, violated the California Health and Safety Code Section 41700 by, inter alia, inadequately containing landfill gas, leachate, and associated surface emissions at CCL, which has caused noxious and/or toxic odor, particulate, substance, liquid and other unlawful emissions from the landfill.  SCAQMD received more than 4,000 resident complaints in 2023 of an odor nuisance with CCL as the source.  SCAQMD has issued approximately dozens of NOVs against CCL for public nuisance in violation of the agency's Rule 402 and California Health and Safety Code Section 41700, and numerous other agencies have issued NOVs identifying other violations of laws and regulations intended for the benefit of PLAINTIFFs.

88.     DEFENDANTS' violation of California Health and Safety Code Section 41700 and other applicable laws and regulations related to maintenance, operation, inspection, reporting, notice and/or repair at CCL were the sole, direct, and proximate cause of the incident out of which this action  arises  and PLAINTIFFS' resulting injuries and damages.

89.     As a direct and proximate result of the above-described negligent conduct and tortious acts and omissions of DEFENDANTS, and each of them, PLAINTIFFS sustained serious personal injuries, which have caused, and continue to cause PLAINTIFFS pain and suffering, all to their general and non-economic damages in an amount which will be stated according to proof at

the time of trial pursuant to California Code of Civil Procedure § 425.10.

90.    As a direct and proximate result of the above-described negligent conduct and tortious acts and omissions of DEFENDANTS, and each of them, PLAINTIFFS sustained serious injuries which have required medical care and which and which will continue to require medical care and treatment, all to PLAINTIFFS' special and economic damages, will be stated according to proof at the time of trial pursuant to California Code of Civil Procedure § 425.10.

91.    As a direct and proximate result of the above-described negligent conduct and tortious acts and omissions of DEFENDANTS, and each of them, PLAINTIFFS have suffered and will continue to suffer the loss of the quiet use and enjoyment of their property, as well as public properties located in the area, have suffered and will continue to suffer the diminution of the value of their property, and/or have been or will be required to expend monies to repair and/or restore the property to its original condition, will be stated according to proof at the time of trial pursuant to California Code of Civil Procedure § 425.10.

## THIRD CAUSE OF ACTION

## STRICT LIABILITY FOR ULTRAHAZARDOUS ACTIVITIES

**(By PLAINTIFFS Against DEFENDANTS CHIQUITA CANYON, LLC, a Delaware Limited Liability Company; CHIQUITA CANYON, INC., a Delaware Corporation; WASTE CONNECTIONS US. INC., a Delaware Corporation; AMERESCO CHIQUITA CANYON ENERGY LLC, a Delaware Limited Liability Company; STEARNS, CONRAD AND SCHMIDT CONSULTING ENGINEERS, INC. (dba SCS ENGINEERS), a Virginia Corporation; and DOES 1 through 150, inclusive)**

92.    PLAINTIFFS incorporate by reference all allegations of the preceding paragraphs 1 through 91 as though fully set forth herein.

93.    At all times herein, DEFENDANTS were the owners and operators of CCL and/or equipment, functions, operations, infrastructure and/or facilities at CCL.

94.    At all times relevant to this action, DEFENDANTS, and each of them, had supervision, custody, and control of the CCL and/or material portions of the facility therein.

95.    At all times relevant to this action, DEFENDANTS, and each of them, were under a continuing duty to protect the PLAINTIFFS from the natural consequences of defective operations and equipment and the mishandling of chemicals, including but not limited to hydrogen sulfide, benzene, and methane which are exuded as a result of handling landfill and solid waste disposal, at CCL.

96.    DEFENDANTS, and each of them, were engaged in an ultrahazardous activity by handling landfill gas collection and a control system that includes vertical and horizontal gas collection wells and associated piping and trenches, a landfill gas treatment system, and a condensate/leachate collection system, including but not limited to hydrogen sulfide, benzene and methane, at CCL.

97.    PLAINTIFFS have suffered harm as a result of DEFENDANTS' conduct as described herein including but not limited to physical and/or bodily injury, property damage, loss of use and enjoyment of their homes and other expenses.

98.    The injuries sustained by PLAINTIFFS as a result of DEFENDANTS' conduct described herein were the direct and proximate result of DEFENDANTS' activities.

99.    The harm to PLAINTIFFS was and is the kind of harm that would be reasonably anticipated as a result of the risks created by the improper handling of a landfill and solid waste disposal that contain hazardous chemicals.

100.    DEFENDANTS' harm to PLAINTIFFS was foreseeable because fugitive discharge of hydrogen sulfide and other chemicals from CCL would reasonably result in a significant environmental impact on the surrounding communities.

101.    DEFENDANTS' operation and use of CCL and resulting discharge was and remains a substantial factor in causing the harms suffered by PLAINTIFFS.

102.    DEFENDANTS, and each of them, are liable to PLAINTIFFS for all damages arising from this ultrahazardous activity, including all compensatory damages, and punitive damages pursuant to Cal Civ. Code § 3294, and attorney's fees pursuant to Cal Civ. Code § 1021.5.

103.    DEFENDANTS are liable to PLAINTIFFS for all damages arising from their

violations of California Civil Code section 3479 and California Health & Safety Code section 25510(a), including compensatory and injunctive relief, punitive damages pursuant to California Civil Code § 3294, and attorneys' fees pursuant to California Code of Civil Procedure § 1021.5.

104.    The wrongful acts, representations and/or omissions of DEFENDANTS, hereinabove set forth, were made, adopted, approved, authorized, endorsed and/or ratified by their officers, directors or managing agents, and were done maliciously, oppressively, fraudulently and/or with a willful and knowing disregard of the probable dangerous consequences for the health and safety of PLAINTIFFS and their community.

105.    In failing to take protective measures to safeguard against the danger, the officers, directors and/or managing agents of DEFENDANTS acted with a willful and/or knowing disregard of the probable dangerous consequences, and/or acted with an awareness of the probable dangerous consequences of their conduct and deliberately failed to avoid those consequences, thereby creating a substantial risk of injury to PLAINTIFFS and the surrounding community.

106.    PLAINTIFFS are entitled to punitive and exemplary damages in an amount to be ascertained, which is appropriate to punish or set an example of DEFENDANTS and deter such behavior by DEFENDANTS and others in the future.

**FOURTH CAUSE OF ACTION**

**PRIVATE NUISANCE - CONTINUING**

**(By PLAINTIFFS Against DEFENDANTS CHIQUITA CANYON, LLC, a Delaware Limited Liability Company; CHIQUITA CANYON, INC., a Delaware Corporation; WASTE CONNECTIONS US. INC., a Delaware Corporation; AMERESCO CHIQUITA CANYON ENERGY LLC, a Delaware Limited Liability Company; STEARNS, CONRAD AND SCHMIDT CONSULTING ENGINEERS, INC. (dba SCS ENGINEERS), a Virginia Corporation; and DOES 1 through 150, inclusive)**

107.    PLAINTIFFS incorporate by reference all allegations of the preceding paragraphs 1 through 106 as though fully set forth herein.

108.    PLAINTIFFS own and/or occupy property at or near the exposed area.  At all relevant times, PLAINTIFFS had a right to occupy, enjoy, and/or use their property without interference by

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

DEFENDANTS.

109.    DEFENDANTS and each of them, by reason of their wrongful acts and/or omissions created a condition that (a) was harmful to PLAINTIFFS' health; (b) was indecent and/or offensive to PLAINTIFFS' senses; (c) was an obstruction of PLAINTIFFS' free use and enjoyment of their property, so as to interfere with their comfortable enjoyment of life and/or property; and/or (d) unlawfully obstructed PLAINTIFFS' free passage or use, in the customary manner, of public parks, squares, streets, and/or highways in the exposed area.

110.    PLAINTIFFS did not consent to DEFENDANTS' conduct. To the extent PLAINTIFFS gave any express or implied permission for the handling of landfill and solid waste disposal that contain hazardous chemicals, such permission extended only to a properly maintained, up-to-date, and safe facility, and DEFENDANTS and each of them, exceeded the scope of any such consent by operating a dangerous, aging, and faulty containment facility near PLAINTIFFS' property.

111.    An ordinary person of reasonable sensibilities would reasonably be annoyed and/or disturbed by the conduct of DEFENDANTS and each of them. The seriousness of PLAINTIFFS' injuries outweighs any public benefit from the conduct of DEFENDANTS and each of them.

112.    As a direct and legal result of the wrongful acts and/or omissions of DEFENDANTS and each of them, PLAINTIFFS have suffered, and will continue to suffer, discomfort, annoyance, anxiety, fear, worries, and stress attendant to the interference with PLAINTIFFS' occupancy, possession, use, and/or enjoyment of their property, as alleged above.

113.    As a direct and legal result of the wrongful acts and/or omissions of DEFENDANTS and each of them, PLAINTIFFS suffered and continue to suffer damages as herein above set forth.

## FIFTH CAUSE OF ACTION

### PRIVATE NUISANCE - PERMANENT

**(By PLAINTIFFS Against DEFENDANTS CHIQUITA CANYON, LLC, a Delaware Limited Liability Company; CHIQUITA CANYON, INC., a Delaware Corporation; WASTE CONNECTIONS US. INC., a Delaware Corporation; AMERESCO CHIQUITA CANYON ENERGY LLC, a Delaware Limited Liability Company; STEARNS, CONRAD AND SCHMIDT CONSULTING ENGINEERS, INC. (dba SCS ENGINEERS), a Virginia**

34

**Corporation; and DOES 1 through 150, inclusive)**

114.    PLAINTIFFS incorporate and re-allege each of the paragraphs 1 through 113 above as though fully set forth herein.

115.    DEFENDANTS and each of them, by reason of their wrongful acts and/or omissions created a permanent condition that (a) is harmful to PLAINTIFFS' health; (b) is indecent and/or offensive to PLAINTIFFS' senses; (c) is an obstruction of PLAINTIFFS' free use of their property, so as to interfere with the comfortable enjoyment of life or property; and/or (d) unlawfully obstructs PLAINTIFFS' free passage or use, in the customary manner, of public parks, squares, streets, and/or highways in the exposed area.

116.    This permanent condition has interfered with PLAINTIFFS' free use and enjoyment of their land, along with numerous other neighbors, in the form of damage to buildings, a significant decrease in the value of the property, exposure to an array of toxic substances on the land, and/or a lingering and foul smell of toxic gases, permeating the air surrounding their property and invading their homes.

117.    PLAINTIFFS did not consent to the conduct of DEFENDANTS and each of them, which was a substantial factor in causing PLAINTIFFS' harm.

118.    An ordinary person would be reasonably annoyed or disturbed by the conduct of DEFENDANTS and each of them.

119.    The seriousness of the harm outweighs any public benefit of DEFENDANTS' conduct.

120.    As a direct and legal result of the wrongful acts and/or omissions of DEFENDANTS and each of them, PLAINTIFFS suffered and continue to suffer damages as herein above set forth.

**SIXTH CAUSE OF ACTION**

**PUBLIC NUISANCE - CONTINUING**

**(By PLAINTIFFS Against DEFENDANTS CHIQUITA CANYON, LLC, a Delaware Limited Liability Company; CHIQUITA CANYON, INC., a Delaware Corporation; WASTE CONNECTIONS US. INC., a Delaware Corporation; AMERESCO CHIQUITA CANYON ENERGY LLC, a Delaware Limited Liability Company; STEARNS, CONRAD AND SCHMIDT CONSULTING ENGINEERS, INC. (dba SCS ENGINEERS), a Virginia Corporation; and DOES 1**

35

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

**through 150, inclusive)**

121.     PLAINTIFFS incorporate and re-allege each of the paragraphs 1 through 120 above as though fully set forth herein.

122.     PLAINTIFFS own and/or occupy property at or near the exposed area. At all relevant times, PLAINTIFFS had a right to occupy, enjoy, and/or use their property without interference by DEFENDANTS.

123.     DEFENDANTS and each of them, by reason of their wrongful acts and/or omissions created a condition that (a) is harmful to PLAINTIFFS' health; (b) is indecent and/or offensive to PLAINTIFFS' senses; (c) is an obstruction of PLAINTIFFS' free use of their property, so as to interfere with the comfortable enjoyment of life or property; and/or (d) unlawfully obstructs PLAINTIFFS' free passage or use, in the customary manner, of public parks, squares, streets, and/or highways in the exposed area.

124.     This condition has interfered with PLAINTIFFS' free use and enjoyment of their land, along with numerous other neighbors, in the form of damage to buildings, a significant decrease in the value of property, exposure to an array of toxic substances on the land and/or a lingering and foul smell of toxic gases, permeating the air surrounding their property and invading their homes.

125.     The condition that DEFENDANTS created and/or permitted to exist affected a substantial number of people within the general public, including causing PLAINTIFFS to relocate, personal injuries and disturbance in the enjoyment of everyday living.

126.     PLAINTIFFS did not consent to the conduct of DEFENDANTS and each of them, which was a substantial factor in causing PLAINTIFFS' harm.

127.     An ordinary person of reasonable sensibilities would reasonably be annoyed and/or disturbed by the condition created by each and every DEFENDANT.

128.     The seriousness of the harm outweighs any public benefit of DEFENDANTS' conduct.

129.     As a direct and legal result of the wrongful acts and/or omissions of DEFENDANTS and each of them, PLAINTIFFS suffered and continue to suffer damages as herein above set forth.

## SEVENTH CAUSE OF ACTION

### PUBLIC NUISANCE - PERMANENT

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

**(By PLAINTIFFS Against DEFENDANTS CHIQUITA CANYON, LLC, a Delaware Limited Liability Company; CHIQUITA CANYON, INC., a Delaware Corporation; WASTE CONNECTIONS US. INC., a Delaware Corporation; AMERESCO CHIQUITA CANYON ENERGY LLC, a Delaware Limited Liability Company; STEARNS, CONRAD AND SCHMIDT CONSULTING ENGINEERS, INC. (dba SCS ENGINEERS), a Virginia Corporation; and DOES 1 through 150, inclusive)**

130.    PLAINTIFFS incorporate and re-allege each of the paragraphs 1 through 129 above as though fully set forth herein.

131.    PLAINTIFFS own and/or occupy property at or near the exposed area. At all relevant times, PLAINTIFFS had a right to occupy, enjoy, and/or use their property without interference by DEFENDANTS.

132.    DEFENDANTS and each of them, by reason of their wrongful acts and/or omissions created a permanent condition that (a) is harmful to PLAINTIFFS' health; (b) is indecent and/or offensive to PLAINTIFFS' senses; (c) is an obstruction of PLAINTIFFS' free use of their property, so as to interfere with the comfortable enjoyment of life or property; and/or (d) unlawfully obstructs PLAINTIFFS' free passage or use, in the customary manner, of public parks, squares, streets, and/or highways in the exposed area.

133.    This condition has interfered with PLAINTIFFS' free use and enjoyment of their land, along with numerous other neighbors, in the form of damage to buildings, a significant decrease in the value of the property, exposure to an array of toxic substances on the land, and/or a lingering and foul smell of toxic gases, permeating the air surrounding their property and invading their homes.

134.    The condition that DEFENDANTS created and/or permitted to exist affected a substantial number of people within the general public, including causing PLAINTIFFS to relocate, personal injuries, and disturbance in the enjoyment of everyday living.  The condition described herein is permanent.

135.    PLAINTIFFS did not consent to the conduct of DEFENDANTS and each of them, which was a substantial factor in causing PLAINTIFFS' harm.

///

136.    An ordinary person of reasonable sensibilities would reasonably be annoyed and/or disturbed by the condition created by each and every DEFENDANT.

137.    The seriousness of the harm outweighs any public benefit of DEFENDANTS' conduct.

138.    As a direct and legal result of the wrongful acts and/or omissions of DEFENDANTS and each of them, PLAINTIFFS suffered and continue to suffer damages as herein above set forth.

## EIGHTH CAUSE OF ACTION

### TRESPASS

**(By PLAINTIFFS Against DEFENDANTS CHIQUITA CANYON, LLC, a Delaware Limited Liability Company; CHIQUITA CANYON, INC., a Delaware Corporation; WASTE CONNECTIONS US. INC., a Delaware Corporation; AMERESCO CHIQUITA CANYON ENERGY LLC, a Delaware Limited Liability Company; STEARNS, CONRAD AND SCHMIDT CONSULTING ENGINEERS, INC. (dba SCS ENGINEERS), a Virginia Corporation; and DOES 1 through 150, inclusive)**

139.    PLAINTIFFS incorporate and re-allege each of the paragraphs 1 through 138 above as though fully set forth herein.

140.    PLAINTIFFS own and/or occupy property at or near the exposed area. At all relevant times, PLAINTIFFS had a right to occupy, enjoy, and/or use their property without interference by DEFENDANTS.

141.    DEFENDANTS and each of them, caused a trespass by allowing or causing to seep or migrate matter beyond the boundary of CCL in such a manner that it was reasonably foreseeable that the pollutants would, in due course, invade PLAINTIFFS' real property and cause physical injury to that property.

142.    DEFENDANTS and each of them, were engaged in an ultra-hazardous activity and/or intentionally, recklessly, and/or negligently caused toxic and noxious chemicals, gases, and/or fumes to escape the SCL and invade PLAINTIFFS' property, including the air space

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

surrounding, above, and within PLAINTIFFS' residence.

143.    PLAINTIFFS did not give permission for this direct and/or indirect entry.

144.    As a direct and legal result of the wrongful acts and/or omissions of DEFENDANTS and each of them, PLAINTIFFS suffered and continue to suffer damages as described above and in amount according to proof at trial.

## VII.    <u>PRAYER FOR RELIEF</u>

WHEREFORE, PLAINTIFFS request relief against DEFENDANTS as follows:

a.    a judgment in favor of PLAINTIFFS on all claims;

b.    for compensatory and general damages for PLAINTIFFS according to proof;

c.    an award to PLAINTIFFS for the amount of damages, including personal injuries, property damage, damage to the health of their pets, and diminution in property value, according to proof;

d.    loss of the use and enjoyment of PLAINTIFFS' real and/or personal property;

e.    past and future medical expenses and incidental expenses according to proof;

f.    loss of wages, earning capacity, and/or business profits or proceeds and/or any related displacement expenses, according to proof;

g.    an immediate preliminary and/or permanent injunction against DEFENDANTS to prevent further harm to PLAINTIFFS and to include provisions for further ongoing monitoring of PLAINTIFFS' property and potential remediation by DEFENDANTS;

h.    the cost of future medical monitoring;

i.    general damages for fear, worry, annoyance, discomfort, disturbance, inconvenience, pain, suffering, mental anguish, emotional distress, and loss of quiet enjoyment of property;

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

j.      an award to PLAINTIFFS for punitive and exemplary damages against CCL Defendants according to proof;

k.      all costs of suit, including attorneys' fees where appropriate, appraisal fees, engineering fees and related costs;

l.      for reasonable attorneys' fees pursuant to California Code of Civil Procedure, section 1021.5;

m.     for pre- and post-judgment interest at the legal rate on all amounts awarded; and

n.      for all other relief as this Court may deem just and proper.

DATED: July 15, 2024                    **SCHIMMEL & PARKS, APLC**


By:   _____
       ALAN I. SCHIMMEL, ESQ.
       MICHAEL W. PARKS, ESQ.
       ARYA RHODES, ESQ.
       Attorneys for Plaintiffs

DATED: July 15, 2024                    **NAZARI LAW**


By:   _____
       SHAWNA S. NAZARI, ESQ.
       Attorneys for Plaintiffs

40

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on all causes of action and claims for damages within this Complaint.

DATED: July 15, 2024                    **SCHIMMEL & PARKS, APLC**

By: _____
ALAN I. SCHIMMEL, ESQ.
MICHAEL W. PARKS, ESQ.
ARYA RHODES, ESQ.
Attorneys for Plaintiffs

DATED: July 15, 2024                    **NAZARI LAW**

By: _____
SHAWNA S. NAZARI, ESQ.
Attorneys for Plaintiffs

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**